**Stephen G. ACHONG, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15229.**

United States Court of Appeals
Ninth Circuit.

June 25, 1957.

Samuel P. King, Honolulu, Hawaii, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, Robert N. Anderson, Ellis N. Slack, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and STEPHENS and POPE, Circuit Judges.

DENMAN, Chief Judge.

Achong petitions for review of a decision of the Tax Court holding that the proceeds which he received from the sale of lots of a subdivision of his real estate in Honolulu, Hawaii in 1946 and 1947 were ordinary income rather than capital gain under Section 117, Internal Revenue Code of 1939, 26 U.S.C.A. § 117, and assessing income tax deficiencies against him for $10,799.76 and $1,105.69 respectively for the two years.

Petitioner's sole contention is that the facts do not support the court's finding of fact and conclusion of law that:

"The lots in question were lands held by petitioner for sale to cus-

tomers in the ordinary course of his trade or business, and the gain realized from the sales in the taxable years involved is taxable as ordinary income."

There is no dispute concerning the facts. Petitioner is a United States citizen residing in Hawaii, where in 1923 he received title to 11.55 acres of land under a Special Homestead Agreement with the territorial government. He lived on this land for a number of years prior to 1923 and has lived there continuously since then. At various times he has rented parts of it to others for farming. Throughout the period of his residence on the land until 1950 when he retired, petitioner was employed as a cashier in a meat market. He has never owned any real estate except the land, the sale of which has given rise to this case, and has never previously engaged in the real estate business.

In 1946 petitioner entered into an agreement with one King, a licensed real estate broker, for the subdivision and sale of most of this tract of land. The agreement gave King an exclusive agency to sell a portion of the property in lots to home seekers. The nature of this agreement, which was not disputed at the hearing, is summarized as follows in the Commissioner's brief:

> "The taxpayer maintained control over the actions of the real estate agent in relation to the subdivision in several important aspects. The right to approve any final plan of subdivision was in the taxpayer; plans of improvement were to be subject to his approval as to cost; the taxpayer and his agent were to agree upon the final prices and terms of sale. In addition, the books of account were to be open to the taxpayer's inspection and periodic statements were to be rendered to the taxpayer by the agent. It was agreed that the taxpayer was to reimburse the agent for all expenses of preparing the property for sale, including without limitation the cost of surveying, mapping, and improving the property and perfecting title. All payments made by the agent to the engineering company were charged to the taxpayer on the books of the agent."

Petitioner himself took no part in the solicitation or making of the sale of the lots. King had a subdivision plan prepared which petitioner approved; he hired surveyors and a construction company to build improvements. Petitioner states that none of the improvements were made until after the lots were sold, but it appears that the sales were made "on the representation that improvements would be constructed."

King did not advertise the property; he merely sold it through his real estate office in which he opened an account in petitioner's name. Sales were made by King through contacting persons whom he thought might be interested and to persons who came to him. Petitioner had nothing to do with the sales: when inquiries were made of him he referred the inquirer to King.

The applicable statute is:

> "§ 117. Capital gains and losses
> "(a) Definitions. As used in this chapter—
>
> "(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—
>
> "(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;
>
> *　*　*　*　*　*
>
> "(4) Long-term capital gain. The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income *　*　*."

It is conceded by respondent that petitioner did not originally acquire his real estate for the purpose of sale and that if petitioner had sold the tract as a whole, without subdivision or improvement, it would have been a capital sale. The Commissioner's contention is that the petitioner went into the real estate business in 1946–1947 by subdividing the land into lots and undertaking improvements which were to be made *solely* in order to facilitate the sale of the lots to individual home seekers.

█ Petitioner contends that King, the real estate agent, was an independent contractor because he is the person who did the actual subdividing and selling and therefore that he, petitioner, could not be engaged in the real estate business. Respondent contends that a person may be engaged in a business (without doing any of the actual work himself) through an agent, and that King was petitioner's agent and was not an independent contractor because under his agreement with petitioner all arrangements made by King were subject to petitioner's approval. There seems no doubt that a person may be engaged in business within the meaning of this section through agents. Richards v. C. I. R., 9 Cir., 1936, 81 F.2d 369. The fact that petitioner had other full time employment does not prevent him from being in the real estate business. Fackler v. C. I. R., 6 Cir., 1943, 133 F.2d 509.

To support his contention that King was an independent contractor rather than an agent, petitioner relies on Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353, and Curtis Co. v. C. I. R., 3 Cir., 1957, 232 F.2d 167. In Smith v. Dunn, the taxpayer sold real estate which had been in his family for many years. The selling was handled by a broker "according to his own plans". [224 F.2d 355.] He was to advertise "according to his own ideas" and advertised in his own name. He was to fix his own prices and while the taxpayer had a general right "to pass upon sales prices" there was no evidence to show that he ever did so. The court held that the broker acted as an independent contractor and that the taxpayer was not conducting the business; that on the facts he was merely liquidating a capital asset, and the profits made were capital gain. So also in Curtis Co. v. C. I. R., where the sales were of homes previously owned for rental without any change to facilitate sale.

█ Respondent distinguishes these two cases on the ground that here petitioner retained and exercised much more control than the taxpayer in either and relies on our decision in Richards v. C. I. R., supra, and our other decisions therein cited. There a farmer decided to sell his property and to have it subdivided; he conveyed the property to a bank (to secure a note) upon a trust "to subdivide and sell the property." [81 F.2d 371.] This the bank did, under the deed, by appointing a person designated by the *taxpayer* "as [the taxpayer's] exclusive *agent* to subdivide and improve, and solicit and obtain purchasers * * *." The court held that petitioner was selling the property in his trade or business under the statute and that "the reason [the land was subdivided] was to obtain a larger profit." The fact that the taxpayer is selling a capital asset is by no means conclusive of whether he is doing so as a mere liquidation or in the business of selling subdivided property.[1] Such liquidation may be a business where, as here, taxpayer has the land subdivided and contracts with the buyer to install improvements to increase the profit on his sales.

The decision of the Tax Court is affirmed. We are unable to say that the facts considered show the Tax Court's finding and the conclusion drawn from it are clearly erroneous. F.R.C.P. rule 52(a), 28 U.S.C.A.

---

1. Ehrman v. C. I. R., 9 Cir., 1941, 120 F.2d 607, 610.