**J. Donald FOWLER and Margaret Fowler, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

No. 32940.

United States District Court
N. D. Ohio, E. D.

Sept. 24, 1957.

John H. Ranz, Youngstown, Ohio, for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Harlan Pomeroy, Dept. of Justice, Washington, D. C., Sumner Canary, U. S. Atty., Cleveland, Ohio, for the United States.

WEICK, District Judge.

This is an action to recover $32,712.05 in income taxes claimed to have been erroneously and illegally assessed and collected for the years 1952 and 1953.

The only question presented was whether profits from the sale of real estate were taxable as ordinary income or as capital gains. Internal Revenue Act of 1939, §§ 22 and 117(a) (1), 26 U.S. C.A. §§ 22, 117(a) (1). In the income tax returns, the profits were reported as capital gains. This was disallowed and a deficiency assessment made which taxpayer paid. Claim for refund was duly made and upon its rejection this suit was filed.

This involves a factual determination as to whether the lots and parcels of real estate sold by the taxpayer during the tax years in question constituted property held primarily for sale to customers in the ordinary course of business within the purview of Section 117(a) (1) of the Internal Revenue Code of 1939, Shepherd v. United States, 6 Cir., 231 F.2d 445.

Since only the activities of plaintiff, J. Donald Fowler, are in controversy, he will be referred to as taxpayer. His wife was a necessary party plaintiff because she had signed the joint income tax returns.

Taxpayer was president and treasurer of The J. D. Fowler Company and its wholly owned subsidiaries, Fowler Indus-

trial Service, Inc. and Fowler Rental Equipment Company. All were Ohio corporations of Youngstown and were well managed. Taxpayer spent most of his time in the operations of his companies.

Taxpayer owned 50% of the outstanding capital stock of the parent company, The J. D. Fowler Company, from the date of its incorporation in 1940 until May 1951 when he acquired a total of 70 to 75% of the shares.

The J. D. Fowler Company was engaged in excavation work for business and residence property including grading, laying of water lines, sewers, fire hydrants and handled other improvements.

Taxpayer was a graduate engineer. He had acquired some knowledge of real estate development because of the work of his company. He had served as a member of the Zoning Commission of Boardman Township since its inception in 1947. He had helped in the preparation of zoning regulations.

In December 1947 taxpayer commenced to acquire vacant and undeveloped land in Cranberry Run Village, Boardman Township just south of Youngstown. Over the years through 1952, he made a total of ten separate purchases. One purchase was of an undivided one-half interest in a 20.9 acre tract, which he owned in common with a real estate operator named Hegg. The land so purchased was substantially contiguous and adjoined a public school. Part of the land had been platted and the residue was unplatted acreage. Taxpayer subdivided and platted the land acquired as acreage and replatted the land acquired by lots.

Six plats of land were filed in the Cranberry Run area. In one plat of eight acres taxpayer created twenty-nine lots and dedicated streets. In another, he and his co-owner, Hegg, created thirty-six lots from 20.9 acres and dedicated a road. Minimum set-back building lines were provided. A total of eighty-three platted lots were created and in addition

taxpayer had five tracts of unplatted land.

Taxpayer testified that he acquired this land in order to provide employment for the employees of his company in slack periods. He further testified that, during slack periods, The J. D. Fowler Company, laid out the streets and graded them and put in sewer and water lines and fire hydrants on the property south of the school. Taxpayer paid his company therefor. The cost of improvements amounted to about $9,000.

After he made his first purchase in 1947, taxpayer entered into a verbal agreement with a real estate operator named Clifford E. Fisher. Fisher was in the real estate and mortgage loan business. He had experience with allotments and the building, financing and selling of homes. He had contacts with builders.

He helped taxpayer secure the additional land, taking options therefor, one of which he sold to taxpayer at a profit. He advised taxpayer on problems of allotting, size of lots and so forth and took care of most of the details in connection with the platting. He handled practically all of the sales except the lots which he purchased for himself. Two other brokers sold a few lots.

Fisher and taxpayer worked out minimum sales prices for the lots in Cranberry Run on a front foot basis. Fisher was to receive as his commission the excess of the sales price over the minimum price which taxpayer was to receive. He received commission from builders and from seller and buyer in connection with financing.

Fisher had nothing to do with the property owned by taxpayer in common with Hegg.

Taxpayer dug cellars for some of the basements on the properties which had been sold.

From 1947 through 1951 thirty-one lots were sold in the Cranberry Run area. In 1952 twelve lots and one parcel of land were sold in eleven different transactions. In 1953 nineteen lots and one parcel were sold in thirteen transac-

tions. In the taxable years, a total of thirty-one lots and two parcels were sold in twenty-four transactions. This included the sale of four lots owned by the taxpayer and Hegg jointly.

Fisher purchased one lot in 1952 and six in 1953. Eighteen or more sales were made to individuals other than persons engaged in the real estate and construction business. Some of the lots were sold to builders who constructed homes thereon. Taxpayer would co-operate in financing by waiting for his money until the new home had been completed and sold.

In November 1949 taxpayer acquired a tract of seventy-two acres of vacant and undeveloped land in Lake Newport located on the dividing line between Youngstown and Boardman Township. He testified that he acquired and developed it for the same purposes as the Cranberry Run property and handled it in the same manner through Fisher. Four plats were filed creating two hundred and eighty-nine lots. Taxpayer paid $1,609.-50 to Chester W. Haenny, civil engineer, for engineering services and about $55,-000 to The J. D. Fowler Company for putting in the streets and laying the sewer and water lines.

In March 1950 taxpayer gave an option to purchase part of this property.

Taxpayer sold the bulk of Lake Newport property in 1950 to three purchasers, reporting the sales as short term capital gains and sold the residue in 1952 to a single purchaser. He paid Fisher regular brokerage commissions on these sales totalling $11,450.

Taxpayer had a map rack in his office on which he kept the maps of his property indicating the sales of the lots and the names of the purchasers.

Taxpayer had other occasional transactions in real estate outside of Cranberry Run area.

Taxpayer made a net profit from the sales of real estate for the two taxable years of about $63,000 on gross sales of $117,000. In 1952 it comprised about 30% of the taxpayer's income and 29% in 1953.

Taxpayer contends that his profits should have been taxed as capital gains instead of as ordinary income because (a) he acquired and developed the land in order to provide employment for employees of his company during slack periods, (b) in selling the land he was merely liquidating his investment and (c) his real estate broker handled the platting and other details, bought the lots from taxpayer and sold them to his own customers, and was, therefore, an independent contractor.

■ Taxpayer's stated purpose in acquiring the land, while entitled to consideration and weight, is not controlling. The ultimate question in this type of case is the purpose for which the property was held. Hollis v. United States, D.C.N.D.Ohio, 121 F.Supp. 191; Mauldin v. Commissioner, 10 Cir., 195 F.2d 714.

As was said by the Tax Court in Haden v. Commissioner, 1943 P–H T.C. Memorandum Decisions, par. 43,493 p. 1568:

> The controlling consideration is whether, under the facts, the manner in which the partnership accomplished the sale of its real estate was such that it must be said to have been [engaged] in the business of subdividing and selling real estate.

A person may engage in more than one business or profession. Fackler v. Commissioner, 6 Cir., 133 F.2d 509.

In this case, we do not have a casual, isolated transaction in real estate, but continuous purchases and sales over a period of nearly seven years. The amounts and activities involved were substantial.

Vacant unimproved land was acquired and developed. Acreage was platted into lots. Acreage which had been previously platted was replatted. Streets, sewers, water lines and fire hydrants were constructed and installed. Sales were made by a broker in the regular course of business to a number of persons. This was all done pursuant to a well conceived and executed plan to enhance the salability of the land and provide profit from the sales.

There were many transactions and taxpayer's connection with them too close and intimate for the Court to divorce him from the business of subdividing and selling real estate.

 Since taxpayer was acquiring additional land, it can hardly be said that the sales constituted a liquidation of his investment, but rather a continuance of the business. Even liquidation may constitute carrying on a business. Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, certiorari denied 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534.

 Under the evidence in this case, Clifford E. Fisher, the real estate broker, cannot be regarded as the purchaser of all of the lots nor as an independent contractor. He did purchase seven lots and the deeds therefor conveyed title to him. Deeds for the land which he sold were made direct to the purchasers. He operated under a verbal agreement. The fact that his duties were greater than those of the ordinary broker and his compensation for sales in Cranberry Run was computed on the excess of the purchase price over the established minimum sales price does not make him any the less an agent. Commissions on sales in Lake Newport were computed on the sales price. Taxpayer fixed minimum sales prices which he was to receive net for each lot. He finally determined whether to sell to any purchaser. He executed the deeds. He controlled the entire operation. The activities of the agent in connection with platting and selling the property were the activities of taxpayer. Achong v. Commissioner, 9 Cir., 1957, 246 F.2d 445.

 The evidence compels a finding that the real estate was held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

This memorandum may be adopted as findings of fact and conclusions of law. Judgment may be entered for defendant dismissing the complaint.