321 F.2d 38
 FARMERS STATE BANK OF VALPARAISO, as Administrator of the Estate of Robert Bearup, Deceased, Plaintiff-Appellant-Cross-Appellee,
v.
DRAVO CORPORATION, a corporation, Defendant-Appellee-Cross-Appellant.
 No. 14020-1.
 United States Court of Appeals Seventh Circuit.
 July 9, 1963.
 
 John J. Kennelly, Edward A. Scott, James P. Chapman, Epton, Scott, McCarthy & Bohling, Chicago, Ill., for plaintiff-appellant, Roger J. Boylan, Chicago, Ill., of counsel.
 Thomas D. Allen, David Jacker, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant-appellee.
 Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and GRANT, District Judge.
 CASTLE, Circuit Judge.
 
 
 1
 Farmers State Bank of Valparaiso, as Administrator of the Estate of Robert Bearup, deceased, brought this diversity action in the District Court against Dravo Corporation seeking to recover damages for the alleged wrongful death of decedent, Robert Bearup. Bearup, an ironworker in the employ of the U. S. Steel Corporation, was killed when he fell from a height of about ninety feet while at work in connection with the erection of the structural steelwork for a sinter plant[1] under construction at U. S. Steel's Gary, Indiana, steel works. There was neither staging beneath the level from which he fell nor guard rails around the opening through which he fell. The defendant, Dravo Corporation, was the contractor for the construction and completion of the plant except that U. S. Steel through its American Bridge Division was erecting the steelwork.
 
 
 2
 The plaintiff asserts liability on the basis that Dravo by its contract with U. S. Steel undertook responsibility for the safety and protection of all persons on the premises and was under a duty to Bearup to see to it that staging and other appropriate safety devices were employed in compliance with the Indiana Dangerous Occupations Act (5 Burns, Ind.Stat. Ann., Part 2, Title 20, Sec. 301-307) in the erection of the structural steelwork by U. S. Steel, and that Dravo's contractual undertaking to furnish the design drawings for the structure placed it under a duty to Bearup to include provisions for staging in such drawings. Plaintiff asserts that Bearup's death was the proximate result of Dravo's negligent failure to perform one or both of such duties.
 
 
 3
 The cause was tried to a jury which returned a verdict for the plaintiff awarding damages in the sum of $50,000. The defendant moved for judgment notwith-standing the verdict or in the alternative for a new trial. Defendant's motion for judgment n. o. v. was granted; its motion for a new trial was denied. Plaintiff appealed and the defendant has cross-appealed from the order denying its motion for a new trial.
 
 
 4
 It is well settled that in reviewing the ruling of a trial court on a motion for judgment notwithstanding the verdict, the standards required by that motion are the same as those raised by a motion for a directed verdict. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147. It must be determined whether the evidence justifies submission of the case to the jury. Lambie v. Tibbits, 7 Cir., 267 F.2d 902, 903. Such a motion should be denied where the evidence, along with all inferences to be reasonably drawn there-from, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions. Valdes v. Karoll's, Inc., 7 Cir., 277 F.2d 637; Pinkowski v. Sherman Hotel, 7 Cir., 313 F.2d 190, 192. But in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Hubert v. May, 7 Cir., 292 F.2d 239.
 
 
 5
 The primary question to be determined on this appeal is whether under the facts before us, as shown by the record, there was any evidence of liability which warranted submission of the case to the jury for its determination. Woods v. Geifman Food Stores, Inc., 7 Cir., 311 F.2d 711.
 
 
 6
 Plaintiff predicates liability of the defendant upon the contention that the contract between Dravo and U. S. Steel required Dravo to see to it that staging and other appropriate safety devices necessary to comply with the requirements of the Indiana Dangerous Occupations Act were employed by U. S. Steel in the erection of the structural steel, and that such contract required Dravo to furnish drawings for the use of U. S. Steel providing for the use of such staging and safety devices. If this basic issue as to the duties imposed under the contract is resolved in the negative we need consider no other issue to sustain the judgment order of the District Court. The existence of such contractual duties and their negligent breach is asserted as the keystone of plaintiff's case. We therefore turn to consideration of what the contract provides.
 
 
 7
 The contract, considered as a whole, is not ambiguous. The contract and its specifications, which are made a part thereof, contemplate that Dravo and U. S. Steel would each perform certain of the work so as to construct a complete sinter plant. Although Dravo under the terms of the contract, is charged generally with the construction and completion of the plant, U. S. Steel reserves to itself the furnishing, fabrication and erection of "all structural steelwork" to be done "in accordance with the Contractor's [Dravo's] design drawings". Under the contract heading, "Description of Work" it is provided:
 
 
 8
 "1. Contractor [Dravo] shall furnish and pay for all labor, materials, supplies, services, tools, equipment, utilities, transportation facilities and plant, not furnished by Owner [U. S. Steel] and do and perform all things necessary for the construction and completion of:
 
 
 9
 Sinter Plant at Owner's Gary
 Steel Works, Gary, Indiana
 
 
 10
 which said work is fully described in Owner's Specification No. SG-401-A, attached hereto and made a part of this contract * * *" (emphasis supplied)
 
 
 11
 In the specifications it is provided that Dravo:
 
 
 12
 "Furnish complete design drawings and other required information necessary for Purchaser's [U. S. Steel's] use in detailing, fabricating, furnishing and installing structural steel."
 
 
 13
 and that U. S. Steel:
 
 
 14
 "Furnish, fabricate, shop paint one coat, and erect all structural steel-work. * * * All work will be in accordance with the Contractor's [Dravo's] design drawings."
 
 
 15
 Under the contract heading, "Responsibility for Safety of Persons and Property" it is provided:
 
 
 16
 "15. * * * Contractor [Dravo] shall confine his employees and all other persons who come onto Owner's [U. S. Steel's] premises at Contractor's request or for reasons relating to this contract, to that portion of Owner's premises where the work under this contract is to be performed or to roads leading to and from such work site, and to any other area which Owner may permit Contractor to use.
 
 
 17
 "In addition, Contractor shall assume sole responsibility for the safety of, and shall take all necessary measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises for reasons relating to this contract. * * * Such measures and precautions shall include, but shall not be limited to, all necessary safeguards for warning and protecting workmen and others against hazards and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities."
 
 The specifications further provide:
 
 18
 "Contractor [Dravo] shall equip the work covered by this contract with all proper safety devices for the protection of workmen * * *. Contractor warrants that the work will meet the requirements of, and be in conformity with any and all applicable Federal, State and local laws, rules, regulations and ordinances."
 
 
 19
 Plaintiff contends that the responsibility assumed by Dravo under that section of the contract quoted above which relates to the safety of and protection to be afforded to Dravo's employees and to "any other person who enters upon the Owner's premises for reasons relating to this contract" extended to the employees of U. S. Steel, such as Bearup, who engaged in the erection of the structural steelwork — work which U. S. Steel reserved to itself. But to so read the safety responsibility provision of the contract, or the specification provision last quoted above, would be to ignore the division of work clearly provided for in the contract and specifications. And the contract must be construed as a whole, and not in isolated segments.
 
 
 20
 In the context in which it appears it is obvious that the reference to persons entering the premises "for reasons relating to this contract" applies to invitees of Dravo or others whose presence is incidental to or attributable to the performance of the work contracted to be done or furnished by Dravo but not to an employee of U. S. Steel engaged in the performance of the work it reserved to itself. This is further indicated by the provision requiring Dravo to confine persons entering the premises "for reasons relating to this contract" to that portion of the premises where the work is to be performed — a provision not likely intended to embrace U. S. Steel's own employees over whom it exercised control and direction in the erection of the structural steel.
 
 
 21
 To construe the safety responsibility provision in the manner contended for by plaintiff would be tantamount to construing the provision by which Dravo warranted that the work would be per-formed in conformity with all applicable laws, rules, regulations and ordinances as warranting to U. S. Steel that the latter would perform the work reserved to it in such manner. We find no basis for a construction of the contract which would result in Dravo's warranting U. S. Steel against Steel's own unlawful act, negligence or default.
 
 
 22
 Nor do we find anything in the contract or the evidence adduced which would warrant a finding by the jury that Dravo was negligent in not including provisions for staging in its design drawings for the structural steelwork. The record establishes that Dravo, as required by the contract, did furnish design drawings on all the structural steel-work showing the dimensions and sizes of the structural steel members, and that U. S. Steel's American Bridge Division made its own drawings or plans for the erection of said steelwork. The Superintendent of Steel's American Bridge Division testified that there was no staging beneath the area from which Bearup fell for the reason that American Bridge doesn't place staging in an area where steel is still being erected. He did state that where plans provided for staging it would be erected, but the plans did not so provide. In view of the uncontradicted testimony that U. S. Steel's American Bridge Division prepared its own erection drawings and plans, the further answer of the witness that staging is usually called for in plans, when designs are drawn, does not in our opinion supply a basis on which the jury's verdict can be supported. Such answer cannot be taken as evidence establishing any duty in Dravo to have provided for staging in the design drawings it furnished — the general arrangement drawings — as distinguished from American Bridge Division's detail and erection drawings and plans.
 
 
 23
 The District Court did not err in concluding that as a matter of law there was no evidence to support the jury's verdict. It therefore is unnecessary to consider the issue presented by defendant's protective cross-appeal.
 
 
 24
 The judgment order of the District Court is affirmed.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 A sinter plant is used in steel making. Sintering is a process which, through high heat, conglomerates the ingredients necessary to supply a blast furnace