Harry G. W. VOSS and Mildred J. Voss, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 14250.

United States Court of Appeals Seventh Circuit.

March 6, 1964.

William T. Kirby, Chicago, Ill., Louis L. Meldman, Milwaukee, Wis., James T. Griffin, Chicago, Ill., for plaintiffs-appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Robert J. Golten, Atty., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C. (Franklyn M. Gimbel, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before SCHNACKENBERG, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiffs, Harry G. W. Voss and Mildred J. Voss,[1] sought a refund of income taxes after paying a deficiency of $35,220.65 including interest that had been assessed against them. They appeal from a judgment denying the refund. The judgment was based on a jury verdict that the proceeds plaintiffs received from the sale of certain real estate in the years 1956, 1957, and 1958 were ordinary income rather than capital gains within the meaning of section 1221 of the Internal Revenue Code of 1954.

In 1929 Voss, a dentist, purchased forty-five acres of farm land located near the city limits of Racine, Wisconsin. He bought the land as an investment for $45,000. In 1931 he acquired fifteen additional acres adjacent to the tract in exchange for other property he owned. By 1950 the value of the total acreage had depreciated to $18,000.

Before 1954 taxpayer occasionally derived minimal income from the property

1. Although Dr. Voss' wife is joined in this suit because joint tax returns were filed, taxpayer refers to Voss, the owner of the property.

by renting it for farming, billboard advertising, and as a golf driving range; however, he was unsuccessful in selling the property. Up to that time he had paid approximately $13,000 real estate taxes.

In 1954 taxpayer contacted a Racine realtor, Milton LaPour, to sell the property for him. LaPour attempted to do so but received no offers; thereupon, he advised taxpayer that it was impossible to profitably sell the property as an entire tract. LaPour suggested and developed a plan for subdividing the property. Pursuant to a broad delegation of power from taxpayer (there was no written contract), LaPour graded the land, and installed streets, sewage facilities, and water mains; he also caused the land to be rezoned and annexed to the City of Racine and qualified it for Federal Housing Administration loans. The expenditures for these improvements were paid out of the gross sales proceeds, so that the project was self-financing. LaPour paid all advertising costs. He received ten per cent commission on all sales, five per cent as a broker's fee and five per cent as a developing fee. After paying requisite amounts for land improvements and his commission, LaPour periodically remitted the net proceeds to taxpayer. Voss did not actively participate in the development of the land, nor did he supervise the subdivision. The only activity he engaged in was the routine execution of deeds to purchasers.

Taxpayer contends that the district court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict.

The issue presented is whether the special verdict that taxpayer held the property primarily for sale to customers in the ordinary course of his trade or business was contrary to the only conclusion the jury could with reason have reached.

■ Although it is for the jury to determine disputed questions of fact, it is the duty of the court to determine whether the evidence warrants submis-

sion of the ultimate question to the jury. Farmers State Bank v. Dravo Corp., 321 F.2d 38, 39 (7th Cir. 1963). Here, there was no dispute about the primary evidentiary facts.

The Government concedes that there was no active participation by taxpayer. It contends, however, that LaPour was not an independent contractor but taxpayer's agent and that his efforts in directing the subdivision, improvement, and sale of the property must be imputed to taxpayer. The crucial inquiry, the Government argues, is not the amount of actual control exercised by taxpayer but the *right* to control.

■■ A taxpayer need not personally conduct real estate sales to be in the business; he may act through agents. Moreover, a taxpayer may not insulate himself from the acts of those whose efforts are combined with his in an endeavor to make a profit. But the cases which adhere to these principles do not stand for the proposition, as the Government argues, that because the agent is in the real estate business, the agent's business is necessarily imputed to the taxpayer. Rather, the question is "whether the activities of the taxpayer, including the activities of an agent that can properly be imputed to the principal, taken together with all other relevant factors pertaining to the taxpayer's relationship to the property, place the taxpayer in the real estate business so that the property in question can be said to be held by taxpayer for sale to customers in *his* business." Estate of Mundy, 36 T.C. 703, 712 (1961).

The instant case is distinguishable from Achong v. Commissioner, 246 F.2d 445 (9th Cir. 1957), upon which the Government relies to support its contention that LaPour's activities must be imputed to taxpayer. In that case the Commissioner of Internal Revenue successfully contended that the taxpayer, an owner of real estate for twenty years who engaged a broker to subdivide, improve, and sell the property, was in the real estate business. Although the court said that acts of the agent may be im-

puted to his principal, the case turned on the degree of control exercised by the taxpayer over the broker, not his right to control the agent. In Achong all arrangements made by the broker were subject to the owner's approval.

In Bauschard v. Commissioner, 279 F.2d 115 (6th Cir. 1960), also relied on by the Government, the taxpayer, acting in close concert with a friend, a real estate developer, created a corporation to isolate himself from the real estate business; however, he controlled the price of the lots and was in close contact with the development of the property. Here again, the outcome of the case depended on the degree of control exercised by the taxpayer over his representative.

In Gamble v. Commissioner, 242 F.2d 586 (5th Cir. 1957), also cited by the Government, there was no holding that taxpayer was engaged in the business of selling lots because he possessed a mere unexercised right to control the broker's activities. Rather, the court found that the taxpayer was engaged in the real estate business because he set the prices and arranged the terms of the sales.

Although each case must be decided on its own facts, the case of Smith v. Dunn, 224 F.2d 353 (5th Cir. 1955), is so similar to the instant case that it warrants mention. In Smith, the taxpayer, an architect, sought to liquidate land which he had inherited. In order to make an economically advantageous sale, he decided the land should be subdivided. He employed an engineer to make surveys. He then contracted with a broker who was to receive a ten per cent commission on all sales, to advertise according to his own ideas, to fix his own prices, to pay all expenses, and to remit to the taxpayer the net proceeds. The court held that the broker's activities should not be attributed to the taxpayer. It considered the following factors in reaching such a conclusion: "if the activities were conducted through a representative, whether those activities were carried on by the representative as a part of his own business and at his own expense or primarily in behalf of the taxpayer, and particularly the character and degree of supervision or control exercised by the taxpayer over the representative"

Moreover, the court noted that:

"The taxpayer, as a matter of practice, gave no time to the sale of the lots except that consumed in signing deeds, exercised no supervision or control over prices or advertising or the activities of the broker at all.

"The efforts of the broker were carried out independently of the taxpayer's business and were conducted as a part of the broker's own business and at his own expense and without anything but the most general supervision on the part of the taxpayer."

Estate of Mundy, 36 T.C. 703 (1961), another similar case, was decided under the provisions of the 1954 Code. There the taxpayers attempted to liquidate inherited property but received no offers. Thereupon, they turned it over to a real estate developer who subdivided, developed, and sold the property. The taxpayers did not personally participate in the development; they gave full control over the property to the developer and they merely signed the deeds of conveyance. The Tax Court found that the lots were not held primarily for sale to customers in the course of trade or business.

Taxpayer, in the instant case, was seeking to dispose of a capital asset which he had purchased as an investment and had held for twenty-five years. He turned the property over to LaPour, and thereafter did not supervise its development and sale. His only activity in connection with the property was to sign deeds of conveyance. He continued in the active practice of dentistry. LaPour collected the proceeds of the sales and decided what should be spent for the improvement of the land. He did all the advertising and paid the costs. In these circumstances, we hold that the district judge erred in not directing a verdict for plaintiffs or granting a judgment notwithstanding the verdict.

**168**

Since the case was neither presented nor argued under section 1237 of the Internal Revenue Code of 1954, we do not consider its applicability.

The judgment is reversed with direction to enter judgment for plaintiffs.

KILEY, Circuit Judge (concurring).

I concur. In my opinion the mere right of control—as urged by the government—is insufficient to show that taxpayer held the property primarily for sale to customers in the ordinary course of his trade or profession.