372 F.2d 36
 John P. COYNE, Administrator of the Estate of Donald William Powell, Jr., Deceased, Plaintiff-Appellee,
v.
DUQUESNE LIGHT COMPANY, a corporation (Defendant and Third-Party Plaintiff) and John Mohr & Sons, Inc., a Corporation, Defendant-Appellant,
v.
UNITED STATES STEEL CORPORATION, Third-Party Defendant-Appellant.
 No. 16038.
 United States Court of Appeals Third Circuit.
 Argued November 28, 1966.
 Decided February 3, 1967.
 Rehearing Denied March 13, 1967.
 
 John David Rhodes, Pittsburgh, Pa. (Giles J. Gaca, Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., on the brief), for appellant.
 Edward J. Balzarini, Pittsburgh, Pa. (Joseph W. Conway, Suto, Power, Balzarini & Walsh, Pittsburgh, Pa., on the brief), for appellee.
 Before SMITH, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal by defendant John Mohr & Sons, Inc. from a judgment entered upon a jury verdict of $95,000.00 in favor of plaintiff in a Wrongful Death and Survival action based on diversity jurisdiction and governed by the substantive law of Pennsylvania. The first issue is whether defendant in its contract with the United States Steel Corporation (Steel) here assumed a duty to provide for the safety of plaintiff's decedent who met his death while working under the direction of Steel's American Bridge Division ("Bridge"). Steel was not sued by plaintiff and does not appeal from the verdict against it as third-party defendant for contribution as limited by law.
 
 
 2
 Most of the pertinent facts are not in dispute. In connection with its decision to erect a blast furnace Steel entered into a contract with defendant on September 20, 1960. Under this contract defendant was to be the prime contractor for the erection of the furnace itself and many of the auxiliaries including a slag pit to be equipped with a water system for spraying and cooling the molten slag as it emerged from the smelting process. Steel also negotiated a contract directly with another firm primarily for foundations, but reserved for its own Bridge Division the construction of a bag filterhouse for the removal of dust from the ore.
 
 
 3
 Bridge's construction of the filterhouse required the use of a large "3900" crane with a 120 foot boom. To prevent the crane's Caterpillar treads from becoming mired in the slag pit which had to be traversed, Bridge constructed a ramp from 2½ ton wooden mats laid in place with a smaller "3500" crane having only an 80 foot boom. Even with its boom mounted in the body of the crane six or seven feet off the ground and extended straight up, this "3500" model could not come closer to the high tension wires 104 feet overhead than the minimum distance of 17 feet required to prevent arcing of electricity to the ground.
 
 
 4
 Although a matter of central controversy during the trial, in light of the jury's verdict we accept plaintiff's contention that defendant requested that certain of the mats be removed to enable defendant to work on the water system. After defendant finished its work in the pit unobstructed by the mats which Bridge had removed with the "3500" crane, Bridge on August 21, 1962 started moving the mats back into position again as instructed by Steel's engineer. However, instead of using a "3500" crane, Bridge this time used its "3900" crane. Although the boom on this crane could have been shortened, it was fully extended 120 feet. As plaintiff's decedent, an employee of Steel's Bridge Division, was disconnecting the hook on the crane cable from a ring on the side of one of the wooden mats current jumped from the wires to the boom only eleven feet away and ran down the cable electrocuting him.
 
 
 5
 Both sides recognize that defendant owed plaintiff's decedent no duty to warn of the danger or otherwise provide for his safety apart from the contract between Steel and defendant. But it is plaintiff's position, adopted by the court below, that under section 16 of the contract defendant assumed the sole responsibility for the safety of all persons engaged in work for defendant's benefit. Defendant argues, in contrast, that its duties under section 16 were limited to providing for the safety of persons in connection with work assigned to it under the contract.
 
 
 6
 Examination of section 16 of the contract[1] reveals three paragraphs which must be construed together. The first paragraph provides that defendant shall bear the sole responsibility for the safety of all persons on Steel's premises "for reasons relating to this contract". Plaintiff's decedent was not such a person because the laying of the mats was Bridge's task made necessary originally in order to construct the filterhouse. Nor does the finding, that at the time of the accident the mats were being restored to the position occupied prior to removal at defendant's request, necessitate the conclusion that plaintiff's decedent was on the premises for reasons related to defendant's contract. Defendant had no authority or control over the moving of the mats.[2] In these circumstances it is impossible to accept plaintiff's contention that simply because defendant requested the removal of an obstacle to its work it thereby accepted responsibility for the safety of persons who are on the premises to engage in activity assigned to other contractors or reserved by Steel for itself or for its Bridge Division. Rather, this paragraph appears to require defendant to provide for the safety of all persons who are on the premises to engage in activity assigned to defendant under the contract regardless of what they might be doing or where they might happen to be. Indeed, the first paragraph expressly requires defendant to confine its employees and equipment to its own work area.
 
 
 7
 The second paragraph provides that defendant shall take precautions to prevent the death of its employees "or any other person who enters upon Owner's premises". Plaintiff contends that under this paragraph he "would be entitled to recover even if the decedent had been killed while engaged in Steel's work".[3] However, we cannot hold that defendant by the second paragraph has undertaken duties to provide for the safety of all persons like decedent even though both their presence and their injury are traceable to activity other than that assigned to defendant and over which defendant has no authority or control. Rather, it seems clear that the second paragraph requires defendant to take precautions for the safety of all persons, whoever they might be or for whatever purpose they are on the premises, who might be injured as a result of defendant's activity.
 
 
 8
 The third paragraph does not alter our interpretation of the first two paragraphs of section 16 of the contract that defendant assumes no responsibility for the safety of persons such as decedent who are neither on the premises to engage in activity assigned to defendant nor injured as a result of such activity. This paragraph states that employees of Steel who perform safety responsibilities assigned to defendant are the latter's agents for such purposes. Nowhere in the contract is it declared that defendant is responsible for the safety of Steel's or any other company's employees who may be injured as a result of activity other than that assigned to defendant.
 
 
 9
 Our construction of the contract, under which defendant assumed no responsibility for decedent's death in the circumstances of this case, finds support in Farmers State Bank of Valparaiso v. Dravo Corp., 321 F.2d 38 (7th Cir. 1963). The court there construed a practically identical Steel contract and held that it imposed no duty on the contractor toward the decedent who likewise met his death while engaged in activity reserved for Bridge.
 
 
 10
 Plaintiff attempts to distinguish the Dravo case by pointing out that there the contractor under the express terms of the contract owed a duty to provide for the safety only of persons on the premises for reasons relating to the contract. Here, in contrast, paragraph 2 imposes a duty toward all persons. However, as previously indicated that duty toward all persons exists only where it is defendant's activity which creates the danger. Where the contractor's activity is not involved "[w]e find no basis for a construction of the contract which would result in [the contractor's] warranting U. S. Steel against Steel's own unlawful act, negligence or default". Farmers State Bank of Valparaiso v. Dravo Corp., 321 F.2d 38, 41 (7th Cir. 1963).
 
 
 11
 For the first time on appeal plaintiff argues that the laying of the mats was assigned to defendant and that consequently defendant was responsible for decedent's death under paragraph 1. Plaintiff relies upon the specifications incorporated into the contract which provide that defendant shall "furnish, install and later remove all temporary roads required for use during construction". However, such a provision when read together with the entire contract obviously refers to roadways required in connection with construction assigned to defendant. Our independent review of the record discloses no evidence whatsoever that defendant had any responsibility or authority with respect to the temporary mat runway leading to the filterhouse under construction by Bridge, even if that runway was a "road" within the meaning of the specification.
 
 
 12
 We have considered plaintiff's other arguments and find that they cannot support the judgment below. Our disposition of the case makes it unnecessary to consider other issues posed by defendant.
 
 
 13
 The judgment of the District Court is reversed with instructions to enter judgment for defendant.
 
 
 
 Notes:
 
 
 [1]
 Section 16 provided as follows:
 "16. The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor. Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. Contractor shall confine his employees and all other persons who come onto Owner's premises at Contractor's request or for reasons relating to this contract and his equipment to that portion of Owner's premises where the work under this contract is to be performed or to roads leading to and from such work sites, and to any other area which Owner may permit Contractor to use.
 "Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities whether such machinery, equipment or facilities are the property of or are being operated by, the Contractor, his subcontractors, the Owner or other persons.
 "It is understood that if employees of Owner shall perform any acts for the purpose of discharging the responsibility undertaken by the Contractor in this Article 16, whether requested to perform such acts by the Contractor or not, such employees of the Owner while performing such acts shall be considered the agents and servants of the Contractor subject to the exclusive control of the Contractor."
 
 
 [2]
 The court below so held, stating that the issue was not disputed by plaintiff who wished to avoid a possible conclusion that a statutory employment relationship existed between decedent and defendant. This holding that defendant lacked control is further buttressed by the contract specifications granting Steel exclusive authority to integate and coordinate the construction operations
 
 
 [3]
 Since we have concluded that decedent was in fact killed while engaged in activity reserved to Steel, we consider the merits of this proposition even though it is arguable that plaintiff conceded its invalidity in the court below