Talitha TINCHER, Plaintiff,

v.

WAL–MART, Peter Newbal, Debbie Davis, John Doe, Individually and in their Representative Capacities as Store Manager and Assistant Store Manager; Defendants.

No. TH 93–175–C H/R.

United States District Court, S.D. Indiana, Terre Haute Division.

May 31, 1996.

1210

Michael C. Kendall, Indianapolis, IN, for Plaintiff.

Gus Sacopulos, Sacopulos Johnson Carter & Sacopulos, Terre Haute, IN, for Defendants.

## MAGISTRATE JUDGE'S ORDER ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

HUSSMANN, United States Magistrate Judge.

This matter is before The Honorable William G. Hussmann, Jr., United States Magistrate Judge, on the defendants' **Motion for Judgment as a Matter of Law Following Trial Pursuant to F.R.C.P. 50(b) and Alternatively Motion for New Trial Pursuant to F.R.C.P. 59** and supporting brief filed November 13, 1995, and the Submission of Authorities Pursuant to Local Rule 7.1 filed December 12, 1995. The plaintiff filed a brief in response on February 9, 1996. The defendant's filed their reply brief on March 5, 1996. Oral argument was conducted at 9:30 o'clock a.m., on April 17, 1996. The plaintiff was represented by counsel, Stephanie Jane Hahn. Defendants were represented by counsel, Gregory S. Carter.

## I. The Motion for Judgment as a Matter of Law:

### A. Legal Standards:

A motion for judgment as a matter of law under Fed.R.Civ.P. 50(b) will only be granted where the movant establishes there is no legally sufficient evidentiary basis for a favorable verdict. The district court will neither weigh the evidence nor find facts in ruling on the motion, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather the trial judge will review all of the evidence to " 'determine whether the party with the burden of proof has produced sufficient evidence upon which a jury could properly proceed to a verdict, and ... a mere scintilla of evidence will not suffice.' " *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992) (quoting *Richardson v. Indianapolis,* 658 F.2d 494, 498 (7th Cir. 1981), *cert. den'd,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982)).

The standard for a Rule 50(b) motion for judgment as a matter of law mirrors that for deciding whether to grant a summary judgment. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Anderson v. Liberty Lobby, Inc., supra.* "If reasonable persons could not find that the evidence justifies a decision for a party on each essential element, the court should grant judgment as a matter of law—before trial under Rule 56, later under Rule 50, and using the same federal standard each time." *Mayer v. Gary Partners & Co.,* 29 F.3d 330, 335 (7th Cir.1994). The district court views the evidence in the light most favorable to the non-movant, and where there is a difference or conflict in the testimony, the court will follow the non-movant's version or that most favorable to the non-movant. *Panter v. Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.) *cert. den'd,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *Hannigan v. Sears, Roebuck & Co.,* 410 F.2d 285, 287–88 (7th Cir.), *cert. den'd,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969); *Keaton v. Atchison, Topeka and Santa Fe R.R. Co.,* 321 F.2d 317, 319 (7th Cir. 1963); *Weir v. Chicago Plastering Institute,* 272 F.2d 883, 885 (7th Cir.1959); *see also* Notes of Advisory Committee on 1991 amendments to Rule, FRCP 50 (the 1991 amendment effects no change from the prior standard for a directed verdict); *Sparrow v. Yellow Cab Co.,* 273 F.2d 1, 3 (7th Cir.1959); *Farmers State Bank of Valparaiso v. Dravo Corp.,* 321 F.2d 38, 39 (7th Cir.1963).

### B. Facts in the Light Most Favorable to Plaintiff:

The plaintiff, Talitha Tincher, was baptized into the Seventh Day Adventist Church and began actively practicing the religion at least in September 1989. (Testimony of Tincher.) When she applied to work at defendant Wal-Mart, she indicated on her application that she was not available to work at Wal-Mart during her Sabbath which ran from Friday evening at sunset through Saturday evening at sunset. (Trial Ex. 2.) In 1990, she approached defendant store manager Peter Newbal asking him to transfer her to a stocking crew because that crew did not include Saturday work. She again advised

Newbal that she was a Seventh Day Adventist and that this was the basis for her request for the job change. Newbal made a remark to the effect of "oh yeah, I know all about those," in a manner which plaintiff concluded was sarcastic. (Testimony of Tincher.) On a few occasions thereafter plaintiff was scheduled to work on her Sabbath, and she would have to go back to Newbal or defendant Debbie Davis and "remind them" about her schedule. Newbal would laugh at her when she tried to reschedule her work. (*Id.*) On one occasion, Newbal approached the plaintiff to take a different job which required Saturday work. When she refused, he and she became upset. Newbal made the comment, "What do you want me to do—fire you?" (*Id.*) Between April 3, 1991, and April 3, 1992, the plaintiff was required, or did work on her Sabbath on approximately three occasions. (Testimony of Tincher; Trial Ex. 7.)

With respect to plaintiff's termination, approximately four months before her termination, the plaintiff was working with David Sutherland in the UPC Department which is the department involving computer pricing. One evening, she and Sutherland were "playing around," and Sutherland asked whether she would help him guess the password to the manager's computer database, to which she and Sutherland were not authorized to enter. She guessed that Peter Newbal's birth year was a part of the code and suggested to Sutherland that he use that year as a part of the code. Thereafter, Sutherland guessed the rest of the code and told plaintiff that he obtained access to the manager's database. She knew that accessing the manager's database was not appropriate, and she told her immediate supervisor, Tonia Hunter, about Sutherland's access the next day. (Testimony of Tincher.) This is in keeping with the company handbook which provides that an employee who has a difficulty in her employment should report that problem to her immediate supervisor. (Trial Ex. 6—Company Handbook, p. 3.) The plaintiff believed that Hunter had conveyed her information about Sutherland's access to the manager's database to the appropriate management people, and she did nothing further in that regard.

About one month after the incident with Sutherland, the plaintiff had a discussion with a Brenda Stinson in the presence of Hunter. At that time, Stinson and Hunter discussed Sutherland's access to the computer and the fact that Sutherland had given himself an unauthorized raise. (Testimony of Tincher.) The plaintiff believed that Hunter went to report the matter of Sutherland's unauthorized access to the manager's database to management at the time of this second conversation.

Approximately three months later, on April 2, 1992, Sutherland and Hunter were terminated because they had given themselves unauthorized raises through the use of the manager's database. The plaintiff had never given herself any such raise, and had not herself obtained access to the database. (*Id.*)

On April 3, 1992, plaintiff was called into Debbie Davis' office for a conversation concerning the firing of Sutherland and Hunter. She was told that if she told the truth she would not be fired, and she gave a written statement indicating what she knew and then returned to work. Sometime later that day she was called into a meeting with Peter Newbal, the store manager. Newbal told her that she was fired and told Davis to escort the plaintiff immediately from the premises. The associate exit interview which she was given on that date indicated that the reason why she was terminated was "due to getting access into computer under manager's password—and not letting management know." (Associate Exit Interview, Plaintiff's Ex. 1.) The interview form was signed by Newbal and by no other person from Wal-Mart. The information on the exit interview was false in that plaintiff herself had never gained access into the manager's database using his password, and she in fact had notified Hunter, as she was required to do by the company's handbook.

Newbal was the store manager and had apparent authority to hire and fire. His decision to hire or fire was ratified by Curtis Morgan. The plaintiff never talked to Morgan directly. (Testimony of Tincher.) The information which Newbal conveyed to Mor-

gan was inaccurate because Morgan was told that the plaintiff had gained access to the computer terminal. (Testimony of Morgan.)

Brenda Stinson knew that the manager's database had been accessed by Hunter and Sutherland several months before plaintiff was fired as a result of being in a room during the discussion with plaintiff and Hunter. Stinson did not report the matter to management immediately, and did not do so until a day or two before April 3, 1992. Stinson was not a Seventh Day Adventist, and she was not terminated or disciplined in any way for failing to notify higher management of Sutherland and Hunter's access to the manager's database. (Testimony of Tincher and Stinson.)

Plaintiff was out of work for six months after her termination. She had been earning $5.25 per hour, worked 40 hours per week on most occasions if not somewhat more, and had health care benefits at Wal–Mart. She also participated in a profit sharing program there. She obtained comparable employment starting in October or November 1992. (Testimony of Tincher.)

## C. Legal Analysis:

### 1. As to Liability:

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), makes it an unlawful employment practice "... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion...." The United States Supreme Court has held that Title VII requires employers to make reasonable accommodations, short of undue hardship, for the religious practices of employees. *Trans World Airlines v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). The evidence in this case, in the light most favorable to the plaintiff, indicates only that the plaintiff was required to work on a minimal part of her Sabbath on perhaps three occasions during one year, and that she was scheduled on several occasions to work on her Sabbath. However, all the evidence is that, with the possible exception of three occasions during the year before her termination, she was accommodated when she complained about the scheduling of work during her Sabbath. This Court concludes that Wal–Mart reasonably accommodated the plaintiff's religious request that she not work on her Sabbath. The Court concludes that if the jury based its verdict on the failure to "reasonably" accommodate the plaintiff, that verdict would not have been supported by any evidence. However, the verdict is supported by another legal theory as discussed below, and therefore this finding is not sufficient to grant the motion for judgment as a matter of law.

■ Plaintiff also alleges that she was discriminated against because of her religious belief by the termination of her employment. She employs the *McDonnell Douglas Corp. v. Green* test, found at 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prove her claim by the indirect method of proof. To prove such a claim, plaintiff must show that she holds a sincere religious belief that conflicts with an employment requirement; that she has informed the employer of the conflict; and that she was discharged or disciplined for failing to comply with the conflicting employment requirement. *See EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir.1989). The Seventh Circuit has more recently stated the *prima facie* test for claims of discriminatory termination from employment in *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665 (7th Cir.1995), and *Pilditch v. Board of Education of City of Chicago*, 3 F.3d 1113 (7th Cir.1993). To establish a *prima facie* case of discrimination, plaintiff must prove that she met the employer's legitimate expectations as to job performance, was adequately qualified for her job, was fired, and that her employer sought a replacement for her.[1]

---

1. This Court is unable to locate a precise recitation of the *prima facie* case for religious discrimination by the Court of Appeals for the Seventh Circuit. That Court has recognized that the *prima facie* case method was never intended to be rigid, mechanized or ritualistic. *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1264 (7th Cir.1993). With that in mind, this Court has formulated its best reasoned amalgamation of the *Hacienda Hotel* case with that of recent Seventh Circuit cases on discriminatory termination.

In the light most favorable to the plaintiff, she established by her testimony that she holds a sincere religious belief as a Seventh Day Adventist that she should honor her Sabbath from sundown Friday through sundown Saturday. That belief conflicted on some occasions with her employment schedule and Wal–Mart's needs for employees to work at other locations. The plaintiff testified that she informed Peter Newbal and Debbie Davis of this conflict. By her testimony, plaintiff was performing the basic requirements of her job reasonably well. By her testimony, plaintiff was discharged because Newbal, the store manager, was displeased with her failure to work during her Sabbath which imposed upon him additional difficulties in scheduling and filling employment positions necessary with the company. Another person who did not practice plaintiff's religion (Brenda Stinson) remained employed and was not terminated, although she also knew of Sutherland's improprieties and did not advise management about them.

■■■ The establishment of a *prima facie* case creates a rebuttable presumption of discrimination. *Weihaupt v. American Medical Assn.*, 874 F.2d 419 (7th Cir.1989). The burden of production then shifts to the employer to articulate a legitimate and nondiscriminatory reason for the employee's termination. If the employer is able to dissolve the presumption of discrimination, the burden shifts back to the employee to show by a preponderance of the evidence that the proffered reasons are pretextual. *Wolf v. Buss (America), Inc.*, 77 F.3d 914 (7th Cir.1996). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phoney reason for some action." *Wolf, supra; Russell v. Acme–Evans Co.*, 51 F.3d 64 (7th Cir.1995). There are two methods of showing pretext: pretext may be established directly with evidence that the employer was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible. *Wolf, supra* at 919. The plaintiff may show that proffered reasons are not credible by introducing evidence that demonstrates that: (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the dis-

charge; or (3) the proffered reasons were insufficient to motivate the discharge. *Id.* It is not sufficient for an employee to show that the employer acted incorrectly or undesirably by firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him. *Wolf, supra.*

In this case, the defendants articulated a reason for their actions in terminating plaintiff. In the light most favorable to the plaintiff, those reasons were those articulated during her exit interview and which appear on Exhibit 6. The reasons articulated were that plaintiff "[got] access into computer under manager's password—and not letting management know."

In the light most favorable to the plaintiff, the defendants' reasons were false because she did not herself gain access into the manager's database under the access code and, in fact, she did notify a member of management, Tonia Hunter, of that access. In addition, in the light most favorable to plaintiff, Brenda Stinson, who was not a member of the Seventh Day Adventist Church, knew of Sutherland's access well in advance of April 1992, did not report it, and was not discharged or disciplined. There is sufficient evidence, therefore, in the light most favorable to plaintiff, that the reasons tendered for her termination were not honest reasons. A reasonable jury could have concluded that the reasons tendered for plaintiff's termination were factually baseless, were not the actual reasons for the discharge, or based on Stinson's treatment, were insufficient to motivate the discharge.

### 2. Amount of Damages:

■■ As described above, there was sufficient evidence that plaintiff was out of work six months, earned $5.25 per hour during 40 hour weeks, and was without health insurance. In addition, the testimony of plaintiff indicated that she was embarrassed by having to discuss with members of her church and family the fact that she was terminated for reasons of dishonesty. This is sufficient to support the jury's verdict of $6,000 loss in

back pay and $3,000 in compensatory damages.

### 3. Punitive Damages:

The legal standard upon which this Court relied at the time of trial and now is that articulated in *United States v. Balistrieri*, 981 F.2d 916 (7th Cir.1992). The Seventh Circuit held as follows:

> Punitive damages are appropriate in cases of "reckless or callous disregard for the plaintiff's rights, [or] intentional violations of federal law...." *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983); *see also Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981).... This does not mean that the defendant had to know he was violating the law. As we stated in *McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir. 1984), "[u]nder *Smith*, if the conduct upon which liability is founded evidences reckless or callous disregard for the plaintiff's rights or if the conduct springs from evil motive or intent, punitive damages are within the discretion of the jury."

In this case, as described above, there is evidence which a jury could accept that Peter Newbal intentionally terminated plaintiff because her religious tenets upholding the Sabbath imposed some additional administrative burdens upon him, that he intentionally discharged the plaintiff to rid himself of these burdens, and that he gave false reasons on her exit interview to cover up his decision to terminate her. This amounts to a callous disregard for the plaintiff's rights, or an intentional violation of the federal law. The defendants do not argue that Peter Newbal's actions in firing plaintiff were taken outside the scope of his employment. They do not argue that Wal–Mart is not responsible for punitive damages engendered by the actions.

### C. Conclusion:

The defendants' motion for judgment as a matter of law following trial pursuant to Fed. R.Civ.P. 50(b) is **DENIED**. While there is no evidence upon which a jury could find that defendant Wal–Mart failed to reasonably accommodate the religious preferences of the plaintiff, there is sufficient evidence to prove that defendant Wal–Mart Stores, Inc., was guilty of violating Title VII by terminating the plaintiff because of her religious practices. There is sufficient evidence to support the jury verdict for the plaintiff, the amount of back pay and compensatory damages, and there is sufficient evidence to allow the issue of punitive damages to go to the jury.

## II. The Motion for a New Trial:

### A. Legal Standards:

 There are several reasons why the Court may grant a new trial under Fed. R.Civ.P. 59. Among those reasons are:

(a) when the verdict is against the "clear" or "great" weight of the evidence and a new trial is necessary to prevent a miscarriage of justice; or

(b) when the verdict is excessive or inadequate such that the amount of the verdict shocks the conscience.

*Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290 (7th Cir.1993); *Latino v. Kaizer*, 58 F.3d 310 (7th Cir.1995); *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361 (7th Cir. 1992).

### B. Legal Analysis:

Of these grounds, the Court concludes for the reasons described in Section I above that the verdict is not against the "clear" weight of the evidence, and that a new trial is not necessary to prevent a miscarriage of justice. While a different jury could have found for the defendants in this case, there is sufficient evidence to support the jury's determination that Wal–Mart's agents did discriminate in their decision to fire the plaintiff, that the jury properly calculated plaintiff's back pay and compensatory losses, and that there is some evidence to support an award of punitive damages in this case.

This Court's reading of *Latino v. Kaizer* indicates that granting a new trial because the verdict is against the greater weight of the evidence is proper only when the record shows that the verdict resulted in a miscarriage of justice, or where the verdict on the record cries out to be overturned or shocks

the conscience. *Latino, supra* at 315. Those circumstances are not present here.

As to the amount of punitive damages in this case, the plaintiff did not enter any evidence concerning defendant Wal–Mart's net worth. However, neither have defendants argued that Wal–Mart cannot possibly pay the fine. In *Kemezy v. Peters,* 79 F.3d 33 (7th Cir.1996), the Seventh Circuit has concluded that it is not necessary to admit evidence of the defendant's net worth in order to establish and recover the amount of punitive damages.

Another recent Seventh Circuit decision in *Allahar v. Zahora,* 59 F.3d 693 (7th Cir. 1995), holds that an award of punitive damages should be set aside only if it exceeds an amount necessary to achieve the objective of punishment and deterrence. However, a punitive damage award "... may not constitute merely a windfall to the prevailing party." *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314 (7th Cir.1985).

▇ In this case, the Court concludes that the award of punitive damages determined by the jury exceeds an amount necessary to achieve the objective of punishment and deterrence, and that part of the award will constitute merely a windfall to the prevailing party. The Court notes that from its own review of the evidence and assessment of credibility, this was an extremely close case on the liability issue. The plaintiff admitted her participation and knowledge of another employee's improper use of a manager's database to give that employee a raise. She admits that she did not make this information known to management beyond Hunter, even after the plaintiff knew or suspected that Hunter herself may have been improperly accessing the database. The plaintiff was probably never required to work on the Sabbath or required to do anything more than remind her employer that she wished not to work on the Sabbath. Another jury could have found that the defendants' articulated reason was not a pretext. The plaintiff's damages are modest, and she has retained employment which pays a higher rate and has comparable benefits to that which she received from Wal–Mart. She obtained that employment within six months after she left Wal–Mart. The evidence was that she was upset for a short period of time, but there is no evidence of any lingering detriment to her reputation or lingering emotional distress that she suffers. The Court believes that an amount of punitive damages which is ten times the amount of the plaintiff's actual damages is sufficient to achieve the objective of punishment and deterrence of Wal–Mart. Amounts over ten times compensatory damages, in addition to the compensatory damages and the payment of attorney's fees, would constitute merely a windfall to the plaintiff. The Court therefore would conclude that a new trial should be held on the issue of the appropriate amount of punitive damages. In the alternative, the Court would deny the motion for a new trial if the plaintiff wishes to accept remittitur of the judgment as to punitive damages and to substitute therefor an award of punitive damages in the amount of $90,000.

**C. Conclusion:**

The amount of punitive damages awarded by the jury exceeds an amount necessary to achieve the objective of punishment of Wal–Mart, and in part amounts to a windfall to the prevailing party. Therefore, the Court concludes that a new trial should be held on the issue of punitive damages only unless the plaintiff wishes to accept remittitur of the punitive damages award to the amount of $90,000. The plaintiff's relief in this case would then include back pay and compensatory damages in the amount of $9,000, punitive damages in the amount of $90,000, and attorney's fees and costs as determined by a separate order entered this same date.

The defendants' request for the alternative relief of a new trial pursuant to Fed.R.Civ.P. 59 is therefore **TAKEN UNDER ADVISEMENT** for a period of 15 days from the date of this order so that plaintiff may advise the Court whether she wishes to accept remittitur or whether she wishes the Court to set a new trial limited to the issue of the appropriate amount of punitive damages.